Chief Justice Bibb
delivered the Opinion of the Court.
In October, 1817, Phillips and wife filed their count, and sued out their precipe against Green,.in a writ of right, demanding one seventh part of a tenement and lot of ground, in the town of Lexington. Upon the trial of the issue of the mere right, exceptions were taken to the opinions of the court, upon instructions moved to the jury. The cause was formerly in this court upon those exceptions; and the decision is reported in Sd Marsh, p. 7. The case was remanded, and upon the trial since had, various exceptions were taken, embracing the instructions given and refused on points of law, as well as the whole evidence, and the refusal of the court to set aside the verdict for the tenant, and award a new trial, on motion of the demandants.
The claim on the part of the demandants, is to recover the tenement in right of Milley Phillips’ claim, as heir to her father, nohvithstanding the *345 deed made by Milley the wife, of June, 1792, whilst she was an infant, and of 1793, whilst she was an. infant and feme covert-, which deed in that trial and in this, is admitted by the parties to include the tenement in controversy, and which deed, upon its face; as well as by the former opinion delivered in this cause, (3 Marsh, p. 11.) did pass the title to Hugh M’Dermed, under whom the tenants derived their title; subject, however, to be avoided after the full age of said Milley.
Statement of - the demand-ant’s evidence.
Evidence of the tenant.
The facts appearing on this trial, so far as necessary for the understanding of the questions of law, are the following:
The demandants and tenant admitted, that Francis M’Dermed died seized of the lot designated on the plat and plan of Lexington, by letter G; which includes the tenement demanded; that Milley M’Dermed, now Milley Phillips, the demandant, is one of the children of said Francis, deceased, and Hugh M’Dermed is another; that the tenants were in possession at the issuing of the precipe, claiming under Hugh M’Dermed, by conveyances regularly derived from and under him.
The demandants then read the depositions of Sarah M’Dermed, the mother of Milley, Catharine Williams, Margaret Cooper, and Mary Ann Shepherd, the sisters of Milley, who prove these facts: that Francis M’Denned, the father, died in April, 1792; that Milley, the demandant, was born on the 13th May, 1774; that said Milley, married her first husband, Gabriel Phillips, in August, 1792, and he died on the 27th of November, 1795; that said Milley married her second and present husband, Edmund Phillips, on the 8th of September, 1796.
Upon this evidence being given, the tenant read in evidence, the deed from Edmund Phillips and Milley his wife, to George Shepherd, bearing date in 1804; conveying to said Shepherd, “all the right, interest and claim, ■ in law or equity, not heretofore conveyed by them, or agreed or covenanted by them, or their ancestor, to be conveyed, which they had, as heirs of Francis M’Dermed, or *346 as heirs of Fanny Wilson, deceased, daughter of the said Francis. M’Dermed, to any lot or parcel of ground, situate, lying and being in the town- of ■Lexington, or its vicinity.”
Deeds of conveyance offered as refuting evidence by demandant.
Deed of indenture between the children of Francis Mc-Dermed, the father of Mil-■]y Phillips executed by her, whilst an -infant-.
Whereupon the demandants, themselves, as tho record states, offered and read in evidence, “for the purpose of shewing that the lots in question, did not pass by said deed, and for no other purpose;” the deed of Milley M’Dermed and others, of 1792, and also read in evidence the deed of Gabriel Phillips and Milley his wife, and others, the children of Francis M’Dermed, to their brother Hugh, hearing date in 1793; these deeds of 1792 and 1723, are those referred to in the former opinion of this court.
The deed of 1792, is executed by all the children of Francis M’Dermed,' deceased, commencing with Hugh, and ending with Milley, then sole, but an infant; it bears date on the 18th June, 1792. It is a deed between Hugh of the one part, and the other •children of the deceased, of the other part, and recites, that -Francis M’Dermed died on the 25th April, 1792; leaving his widow, Sarah M’Dermed, and children who are named, of whom Hugh and Milley are two'; that said Francis, deceased, had left a will, which had by some accident been lost; that said Hugh M’Dermed liad instituted a suit in ■chancery against the other parties to the deed, to ■establish the will; that it had been agreed by all the parties to the deed, that the suit should be withdrawn, and the estate of said deceased, should be ■divided amongst his children, in the manner in the deed described; and, therefore, in c'onsideration of that agreement, of two hundred pounds to he paid to them by Hugh, and of his agreement to extinguish and satisfy the widow’s claim to dower, out of his part and of a cow and calf to each, to he paid by Hugh, for which he had executed his obli-, gations, they, the other chidren of said deceased, conveyed unto Hugh, certain lots in Lexington, of which*, that in controversy, is one, and one hundred acres of said Francis M’Dermed’s survey of 1,400 acres are on Stone Liclc, and waters of Lick *347 ing; for his part, and also an equal share, in the other town lots, with the rest of the children, is conveyed and agreed to belong to Hugh; together with the personal property, the debts excepted in consideration of the agreement and conveyance made by the party of the second part, to him, he, the said Hugh, conveys to the parties of the second, part, all the lots in Lexington, on the north-west, side of market street, and south-east side of upper street, of which said Francis died possessed, except a child’s part thereof, thereby declared to be reserved for said Hugh; excepting also one lot conveyed to Hugh, in trust for Edward M’Dermed, the grandson of said Francis; and said Hugh, also conveys to them the 1,400 acres on Stone Lick and waters of Licking, except the 100 acres, before conveyed to Hugh.
Recital in the deed.
Covenants in the deed between the children of Francis Mq-Dermed.
The deed then contains a covenant and declaration of all the parties, the one with the other, that it is their intention to “carry into effect as far as it can be done conveniently, the intention of the late Francis M’Denned” — the intent of said Francis, deceased, as it is believed by the parties, is declared to have been that Hugh shouldliave and holdthe lots between market street and upper street, during the life of his mother, in trust to support her, and after her death, to him and his heirs forever; and that he should collect the debts due to said deceased, and after payment of his father’s debts, divide the residue among the other representatives; that Edward, the grandson, should have one of the lots on the. north-west side of market street, and south-east side of upper street, and an out lot; and that it was farther the intention of said deceased, that which ever of his children, should possess the part of the 1,400 acres, which binds on Licking, should build a mill, or on refusal, that any other of the representatives should be entitled to the privilege, on giving notice '&c. &c. and after reciting- the various intentions of the testator, the said Hugh, on his part, covenants with the others, to support his mother, and assign her dower out of his share of his father’s estate; that he will faithfully, and as speedily as he can-x collect the debts due his deceased' father, and divide *348 the surplus, after payment' of his’ father’s debts, amongst all the children; that he will hold an in and an out lot, in trust for the grandson Edward, until he arrives at twenty one, and then convey them to him; and if his 100 acres in the division of the 1,400 acres on Stone Licit, and the waters of Licking, should hind on Licking, lie will either build a mill himself, or suffer the others to have that advantage, and that they shall hold the lots and land therein before convoyed' by said Hugh to them, free from the claim of him, the said Hugh and his heirs, executors and administrators, or assigns. Then follows a covenant on the part of all the other parties, with Hugh, and with each other, to divide between themselves, the lots and lands, so held in common, fairly, to abide the privilege about building the mill on Licking; with other covenants on the part of said Hugh,
Hood of 1793, from Phillips and wile to Hugh MeDermed,
The deed of 1798, from. Gabriel Phillips and wife, and others, to H igh M’Derrned, introduced by the demandants, recites, that the deceased father, Francis, had departed this life in April, 1792; that he had left a will, which had been lost by accident, that Hugh had instituted a suit in chancery, in the late supreme court, for the district of Kentucky, to establish the said will, and that an agreement of the 18th June, 1792, between the parties thereto, bad been made for dismissing the suit and dividing the estate; and that the indenture of the 18th of June, 1792, had been executed by the parties thereto, in pursuance of that agreement, and to carry it into effect; that in pursuance of said indenture, and by ponsent of parties, an order of the county court of Fayette, at' July term, 1792, was made, by which, John Hawkins, Samuel M’Millen and John Coburn, were appointed to. divide the lots in Lexington, of which said Francis M’Dermed, died seized, agreeably to the tenor of said indenture; that said Hawkins,-M’Millan and Coburn, had made the division, and reported it to the November term of the said court, and that the parties themselves had laid off' and divided the land on Stone Lick among themselves; therefore, that deed of 1793, is made to carry into effect the intent and meaning, of the in *349 denture of 1792, and for the consideration therein contained, conveys, releases and confirms, to said Hugh M’Dermed, all the in-lots in Lexington, between upper and market streets, of which said Francis died seized, and other lots expressed by their numbers and boundaries, referring to the division which had been made; also, one hundred acres, by metes and bounds out of the tract of 1,400 acres, on Stone Lick and Licking, to have and hold, in-lot 43, and out-lot 85, therein conveyed,, to the use of Edward M’Dermed, the grandson, and all the rest of the lots and land so conveyed to Hugh, to his own use.
bove deeds embraced the ground in «controversy.
iy°phíníps1 and others to Hickey of -
The demandants and tenant then admitted the fact, that the deeds of 1792 and of 1793, included the lot in contest, as one of those therein conveyed to saiej. Hugh M’Dermed. ■ *°
The tenant then read in evidence, a deed bearing date in June, 1794, from Catharine Williams, Mary Ann Shepherd, Margaret Cooper, Hugh M’Dermed, Francis M’Dermed and Milley Phillips, the children of said Frances M’Dermed deceased, together with Charles Williams, Duvall Cooper and George Shepherd, the husbands of the femes coverts, “legatees of Francis M’Dermed deceased,” of the one part, to Simon Hickey and Sarah his wife, of the other part. This deed recites the indenture of the 18th June, 1792, and refers to it as entered of record in Fayettee county court, and that “in compliance” therewith, the parties convey, release and confirm to said Hickey and wife, part of the tract on Stone Lick and Licking, by metes and bounds, containing 157 3-4 acres, and also, certain lots in Lexington, designated by their numbers,
This deed is not signed by Gabriel Phillips; he had departed this life on the 27th November, 1795; it is acknowledged by Milley Phillips alone; on the 26th January, 1796, she being then of full age and a feme sole-, her acknowledgment is made in open court, in Mason county court; the land on Licking and Stone Lick therein conveyed, lying in that county; and the deed is by the court ordered, to record.
Deeds between others read by tenant.
Parol proof of the acquiescence of the parties in the division of the lands and lots, and admission of the possession accordingly in severalty.
Deed of bargain and sale of an infant, is not void but voidable only.
The tenant read in evidence, a plot and plan of division made between the parties to the indenture of 1792, shewing the allotments in severalty to each of the children, corresponding with the deeds of 1792 and of 1793, and read the depositions of John Coburn and George Shepherd, shewing that plot to have been made out under the directions of the commissioners, John Coburn, John Hawkins and Samuel M’Millen, in the year 1792, as referred to in the deed of 1793, when they divided the lands of Francis M’Dermed deceased, among his children.
The tenant read in evidence various deeds, saved from the burning of the county court clerk’s office of Fayette, in 1803; these deeds are from Phillips and Milley his wife, some from herself and husband Gabriel, and some from herself and husband Edmund, with other of her brothers and sisters, to one and the other of the children of Francis M’Dermed deceased, for their purports in severalty, accorc!» ing to the division agreed to be made by the deed of 1792, and corresponding with that made in 1792, by Coburn, Hawkins and M’Millen; in all these deeds, so far as they are legible, and can be understood, tlie deed of 1792, is referred to as the moving consideration.
The tenant gave parol evidence conducing to prove that the parties to the deed of 1792, had all acquiesced in the division made in pursuance thereof by Coburn, Hawkins and M’Millen, and had held and occupied and used their respective purports so laid off in severalty. It was admitted as? a fact by the parties, that the tenement in controversy, has been held and improved, by and under Hugh M’Dermed, ever since tlie deed of the 18th June, 1792'.
The former opinion of this court, has settled these points in this controversy; that the deed of the infant Milley was not void, but voidable only. Secondly, that tlie deed from Milley to Shepherd in 1804, then and now given in evidence by the tenants did not pass the estate to Shepherd, because that deed passed only the unconveyed interest of Milley, and the deed of 1792, had passed the title to Hugh M’Denned, subject, however, to he avoid? *351 ed by Milley. Thirdly, that the act to avoid the deed of 1792, was not necessary to be done during her minority; and that no act precedent to the suit was necessary to avoid it. The question as to ratification by an infant after arriving at full age, and what act would amount td a ratification was not then presented.
What will a™°Xmation 0f a deed of bargain and age ?
Effects of a deed read in evidence cannot be limited by the declaration of the party reading, made when he offers it, but when read, all the .paperis evidence.
*351 ' The merits of the demandant’s title, and of the tenant’s title, now depend upon what will amount to a ratification by the infant. For the demandant, it is insisted that the ratification and assent of the infant after full age, can be signified only by deed, to operate as a deed of confirmation, with all the forms and solemnities of a deed to pass an estate originally. For the tenant it is insisted that the election of an infant, can be by matter in pais or by deed, or by any act sufficient to show an assent and ratification after arriving at full age.
Before entering upon the consideration of the main question, these preliminary observations will tend to elucidate the facts upon which the court was called to pronounce the law.of the case to the jury. The demandants, by their own testimony, adduced to show the infancy and coverture of Milley, the demandant; had shown the time of her birth, when she attained full age, when her first coverture ceased, and when her second coverture commenced* “On this there was no contrariety of evidence; the instructions of the demandants and of the tenant, were predicated upon it, the tenant took the demandants testimony, yielded to its truth, and predicated his instructions on its truth. The demandant Milley was. bom on the 13th of May, 1774; in June, 1792, when she was sole, she executed the deed of that date, then in her nineteenth year; she attained her full age in May, 1795; was discovert from November, 1795, (when her husband Gabriel Phillips died,) until the 8th of September, 1796, when she married her second husband, Edmund Phillips. In this term, of full age, and discoverture, she acknowledged the deed of 25th January, 1796.
The bill of exceptions states, that the demandants introduced the deed of 1792, for the sole purpose of *352 proving, that by the deed of 1804, the tenement in question did not pass to Shepherd, because it had been previously conveyed by the deed of 1792; but the'tenant relies upon the deed of 1792, so introduced by the demandants, and all its recitals and provisions. The demandants having introduced that deed and read it as evidence, cannot limit its effect, as evidence, by a previous declaration of intent to confine its contents to a single point; the tenant had a right to all the facts, which that deed, when read, was competent and sufficient to attest; If we suppose a demandant or plaintiff, introducing a deposition in the cause, with an avowed intention Of relying on a particular fact proved in it, and thereby attempting to prevent the tenant or defendant from using the other facts, pertinent to the issue, disclosed and proved therein, we should be struck with the novelty, as well as with the unlawfulness of the attempt; The rule must be the same, whether the evidence read be contained in a desposition or in a deed. It could not be necessary for the tenant to read the deed again, to entitle himself to the benefit of the evidence contained in it.
.Examination of the deed of 1792, and found to be ' apparently for the benefit of Milly the infant.
Taking that deed as introduced, with its considerations, and its stipulations and covenants on the part of Hugh, to the others who are parties, it appears to be a deed to settle a law suit, which incumbered and threatened the estate of the infant, and the other parties to it; it contained a covenant on the part of Hugh, to disencumber the estates left thereby to the other parties, of dower, to pay to the infant and others money &c. to collect the debts and distribute the money after paying the debts of the deceased father, and for this, Hugh was to retain out of the tract of land on Stone Lick, one hundred acres, and no more, the residue of that tract was thereby conveyed to his brothers and sisters, of that he did not not retain a child’s part; certain town lots were conveyed to Hugh in severalty, part of the estate of the deceased father; and as to the residue they were to be equally divided amongst the children, Hugh having a child’s part; the lawsuit withdrawn, was to establish a will lost by accident; and the deed purports to execute that will as far as practicable. *353 Such is the plain import of the deed of 1792, and by its provisions, a benefit to the infant appears on the face of the deed. Money and property to be paid to the demandant Milley, the setleinent of a law suit, touching her estate, and the removing of the incümbrance of ¿dower of her mother, are all benefits. It has been argued that the, lands conveyed to Hugh for these considerations, leaving Hugh a child’s part in the residue of the town lots, was more than an equal compensation, and therefore, a disadvantage to the infant. But neither the value of the 1,400 acres on Stone Lick, of which Hugh got but 100 acres, instead of one eighth part', nor the relative value of the lots given to Hugh and those reserved to he divided between him and the other children, nor the value of the dower in the estate, is in proof. Prima facie, there is a benefit, and a great benefit resulting to Milley from the terms of the deed of 1792; and that is fortified by the fact that all the other children and husbands acting on behalf of their wives and themselves entered into the arrangement and sanctioned the terms of settlement and division, agreed upon in the deed of 1792; for ought that appears, if the agreement had stood upon articles, not executed by the, deed of 1792, a court of chancery would have executed it even against the infants. (See Smith vs. Lowe, 1 Atk. 489.)
Slight acknowledgements after full age, sufficient to determine the election of the infant to affirm or avoid his voidable deed. An act in pa-is may affirm a voidable deed.
The question, however, which arises out of the trial at law, is, whether any act done by the infant Milley, after she arrived at full age, was in law sufficient, as a ratification of the deed of 1792.
The privileges of infant ai’e intended as a general protection, hut they are not to be made weapons to .attack the interest of others, and to procure to themselves unfair advantages, and a very slight acknowledgment after full age is sufficient to determine the election, which is given to ratify or avoid the act done in infancy.
That an act of an infant, which is voidable only, and not void, may be made perfect after full age, by act inpais, and without deed is recognized in many adjudged cases.
Example of deeds voidable. "
Loase.
Exchange.
indenture.
Lease reserving rent;
Feoffment.
Lease.
Leed of conveyance.
If an infant exchange lands, and after his full age occupy the lands taken in exchange, thereby the exchange is become perfect, Co. Litt. 51, b; Cecil and at vs. Salisbury, 2 Vern. 225.
An infant took a lease, rendering rent. In debt for arrears of rent he pleaded infancy at the time of the lease made; the plaintiff demurred. It was argued for the infant that the lease was void, for that the rent may be of greater value than the land. But the court held it voidable only at his election; for if it were for his benefit, it shall be in no ways void; but the infant may make it void at his election by refusing and waiving the land before rent day comes. But in this case (said the court) it was not showed that the rent was of greater value, and the defendant was of full age before the rent day came; therefore the demurrer was adjudged for the plaintiff; Kelsey’s case, Croke James 320. The same doctrine of affirmation, of a lease taken by an infant,, by continuing in possesion after full age, is recognized in Comyn’s digest; Enfant; C. 3, vol. 3, 164; 1 Roll. ab. 731.
Exchange of an Infant is good, by agreement t® it at full age; IX Viner; Enfant, (K.) p. 408; pi. 2,
If an infant makes an indenture, and at full age binds himself to perform it, he shall not avoid the indenture; ib. pi. 3.
If an infant makes a lease reserving rent, and accepts rent at full age, he shall not avoid the lease; ib. pi. 5.
If an infant makes a deed of feoffment, or lease for life, to commence in futuro, and at full age makes livery, this is a good feoffment; ib. pi. 8>
An infant having made a lease for years, at full age said to'the lessee, God give you joy of it being a usual compliment to express assent and approbation of what is done, it was adjudged to make the lease good; 4 Leonard, 4.
A deed of conveyance was made to an infant, who at the same time mortgaged it to the grantor, a continuance in possession after full age, or a bargain anti *355 sale of the land to a stranger, adjudged to be an affirmance of the contract and deeds of the infant. Hubbard and al. vs. Cummins, 1 Maine Reports, Roberts vs. Wiggin, 1 New Hamp. rep. 73.
Mortgage,
Deed of Mil-, ly PMMip?, feEt,\elcH(> be not void but voidable,
Recital of the deed of conmade1 by the grantor, whilst within aftw3 fuu age, and that the de“l^^the agreement witnessed by-confirmation,
An infant made a mortgage of his lands, and after his full age, he conveyed the same land subject to the mortgage, this was adjudged to affirm and make good the mortgage. Boston Bank vs. Chamberlain and another, 15 Mass. Rep. 220.
Upon the principles adjudged i,n the cases just cited, and according to the formen adjudication of this court, the deed of the infant Milley M’ Dermed, was voidable only, and she had her election to affirm and ratify it after full age, or to avoid, it; and this affirmance might be without deed, but by any act done, signifying assent and approbation..
The deed of January, 1796; acknowledged by her when of full age and under no disability, is á complete assent to, and affirmance of, the deed of 1792. This deed, so acknowledged in 1796, is made by Hugh and Milley, and four others of the children of Francis M’ Dermed deceased, and six of the parties to the deed of 1792, as grantors, to Hickey and Sarah his wife, a seventh party to the deed of 1792; it has reference to that deed, by its date and parties, -it has reference to the agreement therein, to convey to each other, and as having been recorded in the Fayette county court, and then declares, that “in compliance of which” the said parties, do give, grant, alien and confirm &c. unto Hickey and wife, their part in the Stone lick tract, by metes and bounds, and certain of the lots in Lexington, and it recites the death of Fanny Wilson, the other sister and only remaining party to the deed of 1792. Upon this deed by Milley the demandant, so acknowledged, connected with the deed of 1792, and the other evidence adduced by the demandants, and relied on by both parties, it is clear that Milley had affirmed, and ratified the deed of “1782. This acknowledgment of the deed of 1796, is upon its face, by its own words, in fact, and in law, an unequivocal signification of Milley’s election to ratify and affirm her act done in her minority, and is a direct assent *356 to it; the court ought to have instructed the jury, that upon the evidence of the demandants, connected with the deed of Milley Phillips, so acknowledged and recorded'in 1796, they had no title, and that the tenant, who was admitted to have a reg* ular deduction under Hugh M’ Dermed, had a clear title, and the better right to the tenement so hoi den.
In sucli case the estate passes by the ontfiaaldeed, and not by the confifma.7 tyry.
Held on the evidence the demandants had no title, and could not be injured by instructions/
It is proper to remark, that the estate of Milley M’Dermed, now Milley Phillips the demandant, pass» ed in 1792, by that deed; and not by the subsequent ratification smcl assent to that deed, The estate vested in Hugh M’Dermed in 1792; and an act was necessary to be done to avoid and divest the estate. An election belonged to the infant to assent to and affirm the deed of 1792, or to avoid it. She elected not to avoid it; but to abide by, and comply with it. That election being first made, the right of election was executed by the acknowledgment in 1796, the right of election was thereafter gone and extinct; the act of the husband in suing the writ of right in the name of himself and wife, could not avoid the election and ratification of 1796. In this, the difference cpnsists, between a deed of release or confirmation, to pass the title and estate, and right of a disseizee, to the disseizor; as in the ■ instances cited from Co. Litt. and the case under consideration. Tfie deed of 1792, made by Milley, passed her estate and title; it vested in Hugh M’ Dermed by that deed; it required an act by Milley to divest Hugh, and repossess herself of her estate and title; she elected not divest his estate, but to assent to, and abide by the deed of 1792.
This view of the case renders it unnecessary to examine the other points, relating to the evidence or to the instructions in detail. For upon the instructions asked, it became the duty of the court to declare the law of the case to be, that the. demandants had no right to demand the tenement as they demanded it, but that the tenant had.-right to hold it as he then held it. The effect of tine deed, ancl the acknowledgment thereof, by Milley Phillips in Í796, was matter of law; and when connected with the facto *357 agreed, and the facts proved by the demandants, and not controverted, but relied on by the tenant, it did judicially appear to the court that the demandants had no right, but .that the right was in the tenant. There is no cause for disturbing the verdict and judgment. It is therefore affirmed with costs.
Wickliffe, for appellants; Iiaggin, Loughborough, Crittenden and Chinn, for appellee.